UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARTER SCHOOL CAPITAL, INC.,

       Plaintiff,

                                      Civil Case No. 17-11823
v.                                       Honorable Linda V. Parker

TAYLOR INTERNATIONAL ACADEMY,

       Defendant.
_____/

**<u>OPINION AND ORDER DENYING RECEIVER'S "MOTION FOR ORDER TO SHOW CAUSE, TO ENFORCE THE RECEIVERSHIP ORDER, TO ENFORCE M.C.L. 388.1701(9), AND TO COMPEL THE MICHIGAN SUPERINTENDENT OF PUBLIC INSTRUCTION TO RESTORE SEIZED FUNDS TO THE RECEIVERSHIP"</u>**

This lawsuit arises from the closure of Defendant Taylor International Academy ("TIA"), a charter school previously operating in Southfield, Michigan. In its Complaint, Plaintiff Charter School Capital, Inc. alleges that it is a secured lender to TIA and that it has a first priority lien in all assets of TIA. Pursuant to the parties' stipulation and a consent order, a receiver has been appointed to wind up TIA's affairs and dissolve it. (*See* ECF No. 7.) Thomas E. Woods currently is serving as the receiver. (ECF No. 12.) The matter is presently before the Court on the Receiver's motion to recover $142,524.17 in state aid payments from the Michigan Superintendent of Public Instruction ("Superintendent"), filed March 23, 2018. (ECF No. 38.) The Superintendent filed a response to the motion on April

6, 2018. (ECF No. 40.) The Receiver filed a reply brief on April 13, 2018. (ECF No. 41.)

**Background**

TIA began operating as a "Public School Academy" ("PSA") in 2010 pursuant to a Charter Contract issued by Central Michigan University's Governor John Engler Center for Charter Schools ("CMU"). TIA's most recent Charter Contract began on July 1, 2015 and was scheduled to expire on June 30, 2020. However, by the end of May 2017, all members of TIA's board of directors and its officers had resigned, leaving TIA without officers or directors. On May 31, 2017, Renaissance School Services, LLC ("RSS"), which had contracted with TIA to provide it with education management services, terminated the contract and removed all management personnel for the school. Also on May 31, due to the lack of management personnel on site to operate TIA, CMU suspended the Charter Contract, effective immediately, and permanently closed the school effective June 1, 2017. The school year had been scheduled to end on June 20, 2017.

Due to the premature closure of TIA, the school could not provide 180 days of pupil instruction. Instead, TIA held classes on only 168 calendar days. TIA provided 1195.2 hours of academic instruction to its students over the course of those school days, however. For the 2016-2017 school year, Michigan's State School Aid Act of 1979 (hereafter "Act" or "statute") required schools to provide

1098 hours and 180 days of pupil instruction. *See* Mich. Comp. Laws § 388.1701(3)(a), (b). However, the Act allows for a district to apply for a waiver of this requirement. *Id*. § 388.1701(3)(a)(ii).

Michigan law authorizes the funding of the state's public-school system, including a PSA such as TIA. *See, e.g.,* Mich. Comp. Laws §§ 388.1611, .1622b. Installments of state aid are conditioned on a district or PSA establishing eligibility for the amount it receives. *See Galien Twp. Sch. Dist. v. Dep't of Educ.*, 871 N.W.2d 382, 385 (Mich. Ct. App. 2015). Eligibility is demonstrated by ongoing reporting requirements and yearly audits. *See* Mich. Comp. Laws §§ 388.1606(4), .1613, .1618(4)(a), .1619, 1622b(3), .1701.

Section 388.1701 of the Act provides that a school failing to satisfy the required hours and days of instruction "shall forfeit from its total state aid allocation an amount determined by applying a ratio of the number of hours or days the district was in noncompliance in relation to the required minimum number of hours and days under this section." Mich. Comp. Laws § 388.1701(3)(c). The statute grants the Michigan Department of Education ("Department") with the authority to reduce the next payment of student aid due to a noncompliant school. *Id*. § .1701(6)(a). On June 6, 2017, the Department sent an email to TIA and CMU indicating that the Department would be reducing TIA's final state aid payment for

the 2016-2017 school year based on its failure to satisfy the 180-days' requirement. (Resp., Ex. 1, ECF No. 40-2.)

A representative from CMU subsequently spoke to the Superintendent seeking an exemption from that requirement. (*Id.*, Ex. 2, ECF No. 40-3.) CMU sent a follow-up e-mail to the Deputy Superintendent on or before June 12, 2017. (*Id.*) In the e-mail, CMU acknowledged that TIA was unable to provide 180 days of instruction during the 2016-17 school year due to the suspension of its Charter Contract. CMU pointed out, however, that TIA did complete approximately 1200 instructional hours as a result of having an extended school day throughout the year—exceeding the Act's hourly requirement. (*Id.*)

In the meantime, this lawsuit was filed on June 8, 2018, and the Court entered a Consent Order for Appointment of Receiver the following day. (ECF Nos. 1, 7.) The Court appointed the Law Offices of Steven E. Smith & Associates as Receiver. (ECF No. 7.) CMU informed the Deputy Superintendent of the Receiver's appointment in a June 20, 2017 e-mail, in which CMU also inquired whether there was an update regarding the request for a waiver of the hours' requirement. (Mot., Ex. B, ECF No. 38-1 at Pg ID 772.) Pursuant to the parties' stipulation, the Court entered an order substituting Thomas E. Woods as the Receiver on June 30, 2017. (ECF No. 12.)

On June 22, 2017, the Deputy Superintendent sent an e-mail to CMU and the Receiver stating that the Superintendent lacks the authority to grant TIA an exception or waiver to the hours' requirement. (Mot., Ex. D, ECF No. 38-1 at Pg ID 777.) The Receiver then sent a letter to the Superintendent "to formally apply for the requisite statutorily-authorized waiver[]" under Michigan Compiled Laws § 388.1701(9). (*Id.*, Ex. E, ECF No. 38-1 at Pg ID 779-785.) The Receiver argued that the statute required the Superintendent to grant the waiver. (*Id*. at 4, Pg ID 782.)

The Superintendent sent the Receiver a letter, dated September 18, 2017, affirming the denial of the waiver request. (*Id*., Ex. G, ECF No. 38-1 at Pg ID 796-98.) In the letter, the Superintendent provided the following response to the Receiver's request for TIA's program to be considered an innovative program entitled to a waiver under subsection (9):

> The Department finds no evidence of a prior request for the exception provided under this section. These requests are considered for programs that wish to implement an innovative program prior to the start of a school year. The district has provided a similar number of days and hours in previous years. In the absence of a significant change to the district's programming, a waiver would be deemed unnecessary for the continuation of the district's program.

(*Id*. at 1, Pg ID 796.) In response to the Receiver's claim that the statute mandated the waiver, the Superintendent wrote:

> [Section 388.1701(9)] states that the days and hours waiver shall be granted for a "department-approved alternative education program or

5

> another innovative program <u>approved by the department</u>." As stated above, the Department did not receive a request for a waiver under this section prior to the start of the 2016-17 school year. As the program has operated previously without the waiver, and there is no evidence to suggest the implementation of an innovative program during the 2016-17 school year, the Department would not be inclined to grant a waiver for the current school year.

(*Id*. at 2, Pg ID 797.)

Without the waiver, TIA's failure to satisfy the 180-days' requirement resulted in the Department reducing the school's final state aid payment by $142,524.17. The Receiver contends that this amount constituted Receivership Property, which the Superintendent seized in violation of the Receivership Order. The Receiver therefore asks the Court to hold the Superintendent in contempt for violating the Receivership Order and order him to restore the seized funds to the receivership.

## Receiver's Arguments and Superintendent's Response

Contending that the Superintendent previously acknowledged that TIA had an approved innovative program and exceeded the educational hours' requirement, the Receiver first argues that the Superintendent was required to waive the minimum 180-days' requirement. Alternatively, the Receiver argues that the Superintendent abused his discretion, to the extent he had any, in refusing to grant the waiver. The Receiver further argues that the Superintendent should have accounted for unused *force majeure* or professional development days under

6

Michigan Compiled Laws § 388.1701(4) and (10) to find that TIA satisfied the hours' requirement. The Receiver claims that the Superintendent violated the Receivership Order by "seizing" state aid payments owed to TIA.

In response, the Superintendent argues that TIA forfeited a portion of its school aid by failing to satisfy the 180-days of pupil instruction requirement. The Superintendent maintains that § 388.1701(9) did not mandate his waiver of the requirement, as an "application by the district for a particular fiscal year" is a condition precedent to the consideration of a waiver that must be satisfied prior to the start of the school year and nothing required the Department to grant a waiver *after* the school year ends. The Superintendent further argues that the Department never approved an alternative education program or innovative program for TIA, as required to grant a waiver. The Superintendent also counters that TIA was not entitled to a credit under the *force majeure* or professional development provisions.

The Superintendent next argues that the Court cannot find the Department in contempt because it is a non-party to this litigation and does not fall within the ambit of Federal Rule of Civil Procedure 65(d), and because the Receivership Order neither bound the Department nor commanded the turnover of school aid forfeited under state law. Finally, the Superintendent asserts laches and impossibility as defenses to the Receiver's motion.

## Analysis

Michigan law required TIA to "provide at least 1,098 hours, *and*, beginning in 2010-2011, the required minimum number of days of pupil instruction." Mich. Comp. Laws § 388.1701(3)(a) (emphasis added). The Michigan legislature's use of the conjunctive "and" reflects its intent that both the minimum hours and days must be satisfied. *See OfficeMax, Inc. v. United States*, 428 F.3d 583, 588 (6th Cir. 2005); *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assoc., Inc.*, 64 F.3d 1001, 1007 (6th Cir. 1995). For the 2016-2017 school year, the required minimum number of days of pupil instruction was 180. Mich. Comp. Laws § 388.1701(3)(b). The Act provides that a school failing to comply with these requirements "shall forfeit" a specified portion of its total state aid allocation. *Id.* § .1701(3)(c).

There is no dispute that TIA failed to satisfy the 180-days' requirement. Thus, the Act required the Department to reduce TIA's state aid allocation in accordance with § 388.1701(3)(c) unless TIA was entitled to a waiver under § 388.1701(9) or credit for the deficiency under the *force majeure* or professional development provisions of § 388.1701(4) or (10). For the reasons that follow, the Court concludes that TIA was not entitled to a waiver or credit.

The Michigan Legislature required the Superintendent to provide waivers under subsection (9) "for a department-approved alternative education program or

8

another innovative program approved by the department, including a 4-day school week." Mich. Comp. Laws § 388.1701(9). As relevant here, the statute states that a waiver "is valid for 1 fiscal year and must be renewed annually to remain in effect." *Id*. § .1701(9)(c). The Receiver maintains that "[i]n prior academic years … TIA provided an 'innovative program approved by the department', a 4-day school week, 8 hours per day, …" (Br. in Supp. of Mot. at 13, ECF No. 38 at Pg ID 732.) The Receiver further claims that the Superintendent acknowledged in his September 18, 2017 letter that TIA provided such a program. (*Id*., citing Ex. G.)

The Receiver misconstrues the Superintendent's statements in his letter. When the two responses quoted in the preceding section, *see supra* at 5-6, are read together, it is clear the Superintendent was expressing that TIA had been following the same program in previous years as it provided during the 2016-17 school year, pursuant to which it satisfied the required hours and days of pupil instruction and therefore never needed a waiver. A waiver therefore was unnecessary (as the Superintendent stated) and, in fact, TIA had not applied for one.[1] The Superintended further expressed that he was denying a waiver because of TIA's failure to apply prior to the start of the 2016-17 school year and TIA's past ability

---

[1] As the Superintendent pointed out in his letter to the Receiver, TIA had provided the minimum hours and days of instruction in previous years following the same program used in the 2016-17 school year. For that reason, "a waiver would be deemed unnecessary for the continuation of the district's program." (Resp., Ex. G at 1, ECF No. 38-1 at Pg ID 796.)

9

to satisfy the 180-days' requirement under the same program in place during its final school year.

The Receiver acknowledges in his first letter to the Superintendent that the first time a request for a waiver was submitted on behalf of TIA was June 7, 2017—after TIA already had closed for the 2016-17 school year. But even setting aside the timeliness of the request, at no time did TIA submit an "application" for a waiver.

The Department maintains a Waiver Application that is available through its website. (*See* Resp., Ex. 3, ECF No. 40-4.) For the 2016-17 school year, the deadline for submitting the application was October 3, 2016. (*Id.*) While the statute does not specifically include a deadline for when a district must apply for a waiver, it does expressly confer upon the Superintendent the authority to carry out the Act. *See* Mich. Comp. Laws § 388.1701(j).

For these reasons, the Court concludes that the Superintendent was not required to waive the minimum 180-days' requirement for TIA. As no timely application was submitted, the Superintendent also did not abuse his discretion in denying the Receiver's request for the waiver. The Court further concludes that TIA was not entitled to a credit for additional days of instruction under the *force majeure* or professional development provisions in the statute.

The *force majeure* provision reads:

to satisfy the 180-days' requirement under the same program in place during its final school year.

The Receiver acknowledges in his first letter to the Superintendent that the first time a request for a waiver was submitted on behalf of TIA was June 7, 2017—after TIA already had closed for the 2016-17 school year. But even setting aside the timeliness of the request, at no time did TIA submit an "application" for a waiver.

The Department maintains a Waiver Application that is available through its website. (*See* Resp., Ex. 3, ECF No. 40-4.) For the 2016-17 school year, the deadline for submitting the application was October 3, 2016. (*Id.*) While the statute does not specifically include a deadline for when a district must apply for a waiver, it does expressly confer upon the Superintendent the authority to carry out the Act. *See* Mich. Comp. Laws § 388.1701(j).

For these reasons, the Court concludes that the Superintendent was not required to waive the minimum 180-days' requirement for TIA. As no timely application was submitted, the Superintendent also did not abuse his discretion in denying the Receiver's request for the waiver. The Court further concludes that TIA was not entitled to a credit for additional days of instruction under the *force majeure* or professional development provisions in the statute.

The *force majeure* provision reads:

> Except as otherwise provided in this subsection, the first 6 days or the equivalent number of hours for which pupil instruction is not provided because of conditions not within the control of school authorities, such as severe storms, fires, epidemics, utility power unavailability, water or sewer failure, or health conditions as defined by the city, county, or state health authorities, shall be counted as hours and days of pupil instruction. With the approval of the superintendent of public instruction, the department shall count as hours and days of pupil instruction for a fiscal year not more than 3 additional days or the equivalent number of additional hours for which instruction is not provided in a district due to unusual and extenuating occurrences resulting from conditions not within the control of school authorities such as those described in this subsection. Subsequent such hours or days shall not be counted as hours or days of pupil instruction.

Mich. Comp. Laws § 388-1701(4). TIA's 2016-17 school year was not cut short due to the type of environmental or health disturbances described in the first clause. Moreover, the early closing of TIA was not "because of conditions" beyond "the control of school authorities."

The Act's provision for qualifying hours due to professional development applies after 2014-2015 only where there is collective bargaining agreement ("CBA") in effect providing for the counting of qualifying professional development for teachers as pupil instruction.[2] Mich. Comp. Laws

---

[2] The statute reads in relevant part:

> Until 2014-2015, a district may count up to 38 hours of qualifying professional development for teachers as hours of pupil instruction. However, if a collective bargaining agreement that provides for the

(Cont'd …)

11

§ 388.1701(10). When TIA was in operation, its website reflected that its staff members were not employed under a CBA. (Resp., Ex. 3 at 2, ECF No. 40-5 at Pg ID 855.) The Receiver does not present evidence suggesting otherwise. Moreover, § 388.1701(10) is limited to satisfaction of the *hours* requirement, but TIA did not meet the *days* requirement.

For these reasons, the Court concludes that TIA forfeited $147,524.17 from its total state aid allocation due to its failure to satisfy the Act's 180-days' requirement. The Superintendent did not violate the Act by withholding those funds and, in fact, was required to do so under its provisions. Those funds, therefore, were not Receivership Property that must be "restored" to the Receivership.

Accordingly,

**IT IS ORDERED**, that the Receiver's Motion for Order to Show Cause, to Enforce the Receivership Order, to Enforce M.C.L. 388.170(8), and to Compel the

---

>     counting of up to 38 hours of qualifying professional development for teachers as pupil instruction is in effect for employees of a district as of July 1, 2013, then until the school year that begins after the expiration of that collective bargaining agreement a district may count up to the contractually specified number of hours of qualifying professional development for teachers as hours of pupil instruction.

Mich. Comp. Laws § 388.1701(10).

Michigan Superintendent of Public Instruction to Restore Seized Funds to the

Receivership is **DENIED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: December 11, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 11, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager